UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

DEVIN SAYERS,

                           Plaintiff,                04 CV 3907 (CPS)(RLM)

             -against-

THE CITY OF NEW YORK, CORRECTION OFFICER
MITTEO FERRO (Shield No. 14663), and CORRECTION
OFFICER MIGUEL NIEVES (Shield No. 13021),

                       Defendants.

-------------------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

LEVENTHAL & KLEIN, LLP
Attorneys for Plaintiff Devin Sayers
45 Main Street, Suite 820
Brooklyn, NY 11201
(718) 722-4100

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 1

STANDARD OF REVIEW .......................................................................................... 2

ARGUMENT ................................................................................................................ 2

      POINT I ............................................................................................................... 2

      DEFENDANTS VIOLATED THE AMERICANS
      WITH DISABILITIES ACT AND
      REHABILITATION ACT .................................................................................. 2

         A.  The American with Disabilities Act and
            Rehabilitation Act Claims are Properly Brought
            Against the Entity and Individual Defendants in
            Their Official Capacities. ...................................................................... 2

         B.  Plaintiff was Denied Access to a Benefit
            Protected under the Americans with Disabilities
            Act 42 U.S.C. §12132 and Rehabilitation Act
            §504. ...................................................................................................... 3

               1) Plaintiff's Disability ................................................................ 3

               2) Plaintiff Was Denied the Service of Safe Transportation .......... 3

      POINT II .............................................................................................................. 6

      DEFENDANTS VIOLATED THE EIGHTH AND
      FOURTEENTH AMENDMENTS .............................................................. 6

         A.  Defendants Were Deliberately Indifferent to
            Plaintiff's Safety. ................................................................................... 6

         B.  Defendants Violated Plaintiff's Right to Be
            Free from Discrimination Pursuant to the Equal
            Protection Clause of the Fourteenth
            Amendment. ........................................................................................... 8

C.  Defendants Were Deliberately Indifferent to Plaintiff's Serious Medical Needs ........................................................9

POINT III ...........................................................................................................12

DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ...................................................................12

POINT IV ...........................................................................................................14

PLAINTIFF HAS ESTABLISHED MONELL LIABILITY. ................................................................................................14

A.  Plaintiff's Constitutional Rights Have Been Violated. ..............................................................................14

B.  Defendants Have Violated Plaintiff's Rights Pursuant to Existing, Unconstitutional Municipal Policies. ..........................................................14

POINT V...............................................................................................................18

DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHT. .....................................................18

POINT VI ...........................................................................................................19

PLAINTIFF'S WITHDRAWAL OF CERTAIN CLAIMS. ........................................................................................19

POINT VII...........................................................................................................19

PLAINTIFF'S STATE LAW CLAIMS OF COMMON LAW NEGLIGENCE AND NEGLIGENT TRAINING/SUPERVISION SHOULD NOT BE DISMISSED.........................................19

CONCLUSION ...................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 256 (1986)...........................................................2

Anderson v. Rochester-Genesee Transportation Authority, 206 F.R.D. 56, 59 (W.D.N.Y. 2001).4

Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) ...................................................16

Beckford v. Irvin, 49 F.Supp.2d 170, 177-178 (W.D.N.Y. 1999)....................................................10

Candelaria v. Greifinger, No. 96 Civ. 0017, 1997 WL 176314, *3 (N.D.N.Y. April 9, 1997)......5

Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986) ...................................................2

Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)...................................................11

Doe v. Pfrommer, 148 F.3d 73, 82-83 (2d Cir. 1998) ...................................................3

Estelle v. Gamble, 429 U.S. 97, 104 (1976)...................................................10

Farmer v. Brennan, 511 U.S. 825, 832 (1994) ...................................................7, 8

Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001)...........3

Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)...................................................8

Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) ...................................................20

Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) ...................................................4

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992) ...................................................14

Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) ...................................................12

Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) ...................................................11

Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003) ...................................................3

Hudson v. Palmer, 468 U.S. 517, 526-527 (1984) ...................................................7

Katersky v. American Airlines, 314 F. Supp.2d 275, 277 (S.D.N.Y. 2004) ...................................21

Kelsey v. Ewing, 652 F.2d 4 (8th Cir 1981)...................................................11

Massey v. Huto, 545 F.2d 45 (8th Cir. 1976)...................................................11

Monell v. Dep't of Social Services, 436 U.S. 658, 690-691, 98 S. Ct. 2018, 2036 (1978)...........16

Nance v. Kelly, 92 F.2d 605, 607 (2d Cir. 1990) ...................................................11

Neitzke v. Williams, 490 U.S. 319 (1989) ...................................................11

Patterson v. County of Oneida, 375 F. 3d 206, 226 (2d Cir. 2004)...................................................18

Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999)...................................................3

Shariff v. Goord, No. 04 Civ. 6621, 2005 WL 1863560, *6  (W.D.N.Y. Aug. 4, 2005)...............4

Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) ........................................18

Sunday Lake Iron Co. v. Wakefield Township, 247 U.S. 350, 352 (1918) ....................................9

Thomas v. Nassau County Corr. Ctr., 288 F. Supp.2d 333, 337 (E.D.N.Y. 2003) .........................7

Walker v. City of New York, 963 F. Supp. 270, 273 (2d Cir. 1992) ...........................................17

Williams v. Vincent, 508 F.2d 541 (2d Cir. 1974).......................................................................12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DEVIN SAYERS,

                                            Plaintiff,                    04 CV 3907 (CPS)(RLM)

                    -against-

THE CITY OF NEW YORK, CORRECTION OFFICER
MITTEO FERRO (Shield No. 14663), and CORRECTION
OFFICER MIGUEL NIEVES (Shield No. 13021),

                                            Defendants.

------------------------------------------------------------------------ x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of plaintiff DEVIN

SAYERS, in opposition to defendants' motion for summary judgment as a matter of law

pursuant to Federal Rule 56. Based on the facts as set forth in the annexed Local Civil Rule 56.1

Statement, the Declarations of Brett H. Klein, Esq. and Douglas A. Hobson, Ph.D., and for the

reasons set forth herein, defendants' motion should be denied.

### STATEMENT OF FACTS

The Court is respectfully referred to plaintiff's Local Civil Rule 56.1 Statement and the

Declarations of Brett H. Klein, Esq. and Douglas A. Hobson, Ph.D. for a statement of the

relevant and material facts in connection with this submission.

## STANDARD OF REVIEW

Summary judgment must be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of establishing "the absence of any genuine issues of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 256 (1986). Any ambiguity must be resolved in favor of the non-movant, see Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986), and "all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255.

For the reasons set forth herein, summary judgment should be denied.

## ARGUMENT

## POINT I

## DEFENDANTS VIOLATED THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT.

### A. The American with Disabilities Act and Rehabilitation Act Claims are Properly Brought Against the Entity and Individual Defendants in Their Official Capacities.

Defendants argue that the claims brought under the Americans with Disabilities Act 42 U.S.C. §12132 and Rehabilitation Act §504 ("disability statutes") against the individual defendants should be dismissed because individual capacity suits are not properly brought against individual defendants under the disability statutes. Indeed, the Second Circuit has held that the disability statutes do not permit claims against officials in their individual capacities. Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001).

However, ADA and Rehabilitation Act claims may be brought against the entity and individuals in their official capacities. Id.; Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir.

2

2003).  Defendants do not dispute that plaintiff properly brought the claims under the disability

statutes against the entity and individual defendants in their <u>official</u> capacities.  Accordingly, all

such claim should be denied.

### B. Plaintiff was Denied Access to a Benefit Protected under the Americans with Disabilities Act 42 U.S.C. §12132 and Rehabilitation Act §504.

It is well settled in the Second Circuit that the claims brought under the Americans with

Disabilities Act 42 U.S.C. §12132 and Rehabilitation Act §504 ("disability statutes") are

considered in tandem by the courts. <u>Rodriguez v. City of New York</u>, 197 F.3d 611, 618 (2d Cir.

1999).  The purpose of the Americans with Disabilities Act and Rehabilitation Act ("disability

statutes) is to ensure that a particular service provided to the non-disabled also be provided to

disabled people.  <u>Doe v. Pfrommer</u>, 148 F.3d 73, 82-83 (2d Cir. 1998).  In particular, the court

must focus on the services provided to able-bodied individuals and compare them to the services

provided to disabled individuals. <u>Rodriguez</u>, 197 F.3d at 618.

1) <u>Plaintiff's Disability</u>

In the instant case, there is no dispute that plaintiff, who is a paraplegic, is disabled under

the disability statutes.

2) <u>Plaintiff Was Denied the Service of Safe Transportation</u>

Defendants argue that plaintiff cannot identify any "benefit" that was denied to him and

therefore plaintiff's claims under the disability statutes should fail.  However, the service

(benefit) at issue in this case is safe and non-discriminatory transportation.   Defendants provide

safe and non-discriminatory transportation to able-bodied prisoners while disabled prisoners, like

plaintiff, are not afforded the same safe transportation.

Congress found that discrimination against disabled individuals persisted in a number of

"critical areas" including transportation.  <u>Anderson v. Rochester –Genesee Transportation</u>

Authority, 206 F.R.D. 56, 59 (W.D.N.Y. 2001).  By enacting the ADA, Congress intended to

"provide a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities" in areas including transportation. 42 U.S.C. §12101(a)(3).

Furthermore, courts have recognized that the disability statutes do apply to prisoners that

are transported.  See Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (transportation

provided by police to detainees is a service within the meaning of the ADA); see Shariff v.

Goord, No. 04 Civ. 6621, 2005 WL 1863560, *6  (W.D.N.Y. Aug. 4, 2005) (transportation of

wheelchair bound prisoner is a service within the meaning of the ADA and Rehabilitation Act);

see also Candelaria v. Greifinger,  No. 96 Civ. 0017, 1997 WL 176314, *3 (N.D.N.Y. April 9,

1997)(case remanded for further factual development regarding plaintiff's claims that the facility

lacked wheelchair accessible vehicles in violation of the ADA).  It is axiomatic that

transportation services are within the purview of the disability statutes.

At the outset, plaintiff, who was handcuffed and limited to a wheelchair for mobility, was

transported in a City of New York Department of Correction ("DOC") van from the Staten

Island courthouse, along with a non-disabled prisoner. Klein Declaration, Exhibit 3 at p. 42;

Klein Declaration, Exhibit 4 at pp. 74-75. Contrary to industry standards and ADA regulations,

plaintiff's wheelchair was improperly (1) oriented facing the passenger side of the DOC van and

(2) and secured using a two rear-wheel securement procedure.   Klein Declaration, Exhibit 1,

¶16; Klein Declaration, Exhibit 3 at pp. 50-52, 55-58.  Plaintiff protested and told the DOC

officers that they were not properly securing his wheelchair and that he would fall but in

response they said "this is our procedure, this is how we have to do it." Klein Declaration,

Exhibit 3 at pp. 48-49, 60-62; Klein Declaration Exhibit 8 at p. 16.

While en route from the Staten Island Courthouse, plaintiff's wheelchair flipped backward thereby injuring plaintiff and fracturing his inferior pubic ramus. Klein Declaration, Exhibit 3 at pp. 71-74; Klein Declaration, Exhibit 7. The non-disabled prisoner in the DOC van was not injured during transport. Klein Declaration, Exhibit 4 at pp. 74-75.

Based on Dr. Douglas Hobson's expert opinion, plaintiff's wheelchair flipped backward injuring plaintiff because DOC officers: (a) improperly oriented plaintiff's wheelchair facing the passenger side of the DOC van and, (b) improperly secured plaintiff's wheelchair to the DOC van. Klein Declaration, Exhibit 1, ¶17. Defendants violated the disability statutes through their failure to provide plaintiff, a disabled prisoner, with safe and non-discriminatory transportation and by placing plaintiff at a risk of injury that is not faced by able-bodied prisoners.

Furthermore, defendants have violated and continue to violate the disability statutes by failing to properly train and supervise DOC employees in securement of occupied wheelchairs in motor vehicles. Klein Declaration, Exhibit 1, ¶¶21, 26. In general, DOC employees do not receive training with respect to ADA compliance. Klein Declaration, Exhibit 6 at p. 66. More specifically, DOC employees receive no formal training from DOC regarding the securement of occupied wheelchairs in motor vehicles. Klein Declaration, Exhibit 4 at pp. 36-38; Klein Declaration, Exhibit 5 at pp.19-21; Klein Declaration, Exhibit 6 at pp. 50-53, 66, 93, 98-99, 103, 152-153, 162-166.

As a result of the failure to train and supervise DOC employees, it is common for wheelchair-bound prisoners to fall over during transport. Klein Declaration, Exhibit 4 at pp. 54-55. Defendants know that the failure to train and supervise their DOC employees results in a foreseeable risk of serious physical harm to disabled prisoners that is not faced by able-bodied prisoners. Klein Declaration, Exhibit 6 at p. 136. Indeed, in this case defendant Nieves conceded

that he never received any wheelchair securement training from DOC. Klein Declaration, Exhibit 4 at p. 36. Moreover, plaintiff warned defendants that they were improperly securing his wheelchair and he would fall. Klein Declaration, Exhibit 3 at pp. 48-49, 60-62; Klein Declaration Exhibit 8 at p. 16. Thus, there is a substantial inference that defendants' conduct was motivated by ill will towards disabled prisoners. Because the disability statutes prohibit such discrimination, plaintiff's ADA and Rehabilitation Act claims should proceed to trial.

## POINT II

### DEFENDANTS VIOLATED THE EIGHTH AND FOURTEENTH AMENDMENTS.

The Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment, while the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical care by the state. See Thomas v. Nassau County Corr. Ctr., 288 F. Supp.2d 333, 337 (E.D.N.Y. 2003). However, "the standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." Id [1]

### A. Defendants Were Deliberately Indifferent to Plaintiff's Safety.

Pursuant to the Eighth Amendment, prison officials have a duty " 'to take reasonable measures to guarantee the safety of inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). To establish a constitutional violation, plaintiff must show that (1) he was incarcerated under conditions that pose a substantial risk of serious harm and (2) the prison official showed deliberate indifference to the

---

[1] Defendants disregarded the real issue in arguing against plaintiff's claims under the Eighth and Fourteenth Amendments. Defendants would have the Court believe that this is simply a case of an auto accident and rely on cases involving auto accidents in support of their proposition. However, plaintiff respectfully submits that this is not a case concerning an auto accident because there wasn't an auto accident. Instead this is a case concerning a prisoner's right to be safe and right to be free from discrimination while in DOC custody. Beckford v. Irvin, 49 F.Supp.2d 170 (W.D.N.Y. 1999)(prisoner's wheelchair taken away in violation of the ADA and Eighth Amendment).

prisoner's health or safety. Id. at 834. Deliberate indifference exists where the "official knows of and disregards an excessive risk to inmate health or safety". Id. at 837.

In this case, defendants had prior notice of the unsafe prison conditions which subsequently harmed plaintiff in three ways: (1) plaintiff informed defendants, (2) through defendants own experiences, and (3) as set forth in industry standards and ADA regulations. Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)(colorable claim under the Eighth and Fourteenth Amendments where prison official had prior notice of unsafe prison condition, namely a defective ladder that plaintiff fell off of).

At the outset, when putting plaintiff into the DOC van, defendants (1) oriented plaintiff's wheelchair to face the passenger side of the DOC van and (2) secured the two rear wheels of plaintiff's wheelchair with one strap crossing plaintiff's waist thereby creating an unsafe prison condition. Klein Declaration, Exhibit 3 at pp. 50-52, 55-58. Plaintiff protested to defendants that the manner in which they were securing his wheelchair was wrong and he would fall. Klein Declaration, Exhibit 3 at pp. 48-49, 60-62; Klein Declaration Exhibit 8 at p. 16. Though warned, defendants did not secure the front of plaintiff's wheelchair as he requested and as a result, plaintiff's wheelchair flipped backward thereby injuring him during transport. Klein Declaration, Exhibit 3 at pp. 65-66, 68. Plaintiff warned defendants about the unsafe prison conditions and defendants knowingly disregarded the risk to plaintiff's safety.

Secondly, defendants knew from experience that failure to properly secure wheelchair bound prisoners in DOC vehicles would increase the likelihood of injury to wheelchair bound prisoners and may result in them falling over during transport, as it had prior to plaintiff's incident. Klein Declaration, Exhibit 6 at p. 136; Klein Declaration, Exhibit 4 at pp. 54-55.

Finally as set forth in industry standards and ADA regulations, it was improper to secure plaintiff's wheelchair by (1) securing straps to the two rear wheels and not the wheelchair frame and (2) using the securement straps on the lower part of the two rear wheels only and failing to secure the front of plaintiff's wheelchair even though it is well known that the rearward stability of the wheelchair is inherently unstable. Klein Declaration, Exhibit 1, ¶17. In addition and pursuant to industry standards and ADA regulations, it was improper to position plaintiff's wheelchair facing the passenger side of the DOC van. Klein Declaration, Exhibit 1, ¶13. It is common sense that an occupant's seat must be forward facing in a vehicle is because the seated human body is much more able to sustain external loads applied to the front then to the side. Klein Declaration, Exhibit 1, ¶11.

The record establishes that defendants were deliberately indifferent to plaintiff's safety causing harm to plaintiff and thereby violating his constitutional rights.

**B. Defendants Violated Plaintiff's Right to Be Free from Discrimination Pursuant to the Equal Protection Clause of the Fourteenth Amendment.**

Defendants argue that the Due Process Clause does not guarantee a right to safe transportation and therefore, plaintiff's claims should fail. Plaintiff respectfully submits that defendants arguments are misguided. The issue is not a right to safe transportation, but a right to be free from discrimination while being transported in DOC custody.

Pursuant to the Equal Protection Clause of the Fourteenth Amendment, Congress may legislate against intentional and arbitrary discrimination. Sunday Lake Iron Co. v. Wakefield Township, 247 U.S. 350, 352 (1918). Accordingly, Congress enacted the ADA pursuant to Section 5 of the Fourteenth Amendment. Beckford v. Irvin, 49 F.Supp.2d 170, 177-178 (W.D.N.Y. 1999)(citations omitted). By enacting the ADA, Congress intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against

individuals with disabilities" in areas including transportation. 42 U.S.C. §12101(a)(3).

Congress may correct discrimination in areas such as transportation through the Equal Protection

Clause. Beckford, 49 F.Supp.2d at 177-178.

As set forth in Point I, *supra*, defendants failed to provide plaintiff, a disabled prisoner,

with safe transportation and discriminated against plaintiff by placing him at risk of injury that is

not faced by able-bodied prisoners. In addition, not only were defendants warned by plaintiff

that they were improperly securing his wheelchair and he would fall, but defendants have

admitted additional knowledge that the failure to train and supervise their DOC employees

results in a foreseeable risk of serious physical harm to disabled prisoners that is not faced by

able-bodied prisoners. Klein Declaration, Exhibit 3 at pp. 48-49, 60-62; Klein Declaration

Exhibit 8 at p. 16; Klein Declaration, Exhibit 6 at p. 136. Based on the foregoing, there is a

substantial inference that defendants' conduct was motivated by ill will towards disabled

prisoners. Because such disparate treatment is prohibited by the Equal Protection Clause where

there is no legitimate governmental interest, plaintiff's meritorious claims should proceed to trial.

### C. Defendants Were Deliberately Indifferent to Plaintiff's Serious Medical Needs

A prison official's deliberate indifference to a prisoner's serious medical need is a

violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). It is well

established in the Second Circuit that:

> The standard of deliberate indifference includes both a subjective component and an
> objective component.   First, the alleged deprivation must be, in objective terms,
> 'sufficiently serious.' Second, the defendant must act with a sufficiently culpable state of
> mind. An official acts with the requisite deliberate indifference when that official knows
> of and disregards an excessive risk to inmate health or safety; the official must both be
> aware of facts from which the inference could be drawn that a substantial risk of serious
> harm exists, and he must also draw the inference.

Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)(internal quotation marks and citations omitted).

As to the first element, a medical condition is objectively considered "serious" if it is a "condition of urgency" that may result in "degeneration" or "extreme pain." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)(citing Nance v. Kelly, 92 F.2d 605, 607 (2d Cir. 1990)). The types of conditions which have been held to meet the constitutional standard of a serious medical need include a brain tumor, Neitzke v. Williams, 490 U.S. 319 (1989); broken pins in a hip, Hathaway, 99 F.3d 550; premature return to prison after surgery, Kelsey v. Ewing, 652 F.2d 4 (8th Cir 1981); a bleeding ulcer, Massey v. Huto, 545 F.2d 45 (8th Cir. 1976); and loss of an ear, Williams v. Vincent, 508 F.2d 541 (2d Cir. 1974).

Defendants do not dispute that the injury plaintiff suffered, a fracture to the inferior pubic ramus, is serious and resulted in extreme pain to plaintiff for almost one year after the incident. Klein Declaration, Exhibit 7. Plaintiff's fracture compounded arthritic changes secondary to plaintiff's paraplegia which will affect plaintiff throughout the rest of his life. Klein Declaration, Exhibit 7.

As to the second element, the prison official must act with a sufficiently culpable state of mind. The level of culpability must be something "more than negligence, but less than conduct undertaken for the very purpose of causing harm." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

In this case, plaintiff protested to defendants that the manner in which they were securing his wheelchair was wrong and he would fall. Klein Declaration, Exhibit 3 at pp. 48-49, 60-62; Klein Declaration Exhibit 8 at p. 16. Though warned, defendants did not secure the front of

plaintiff's wheelchair as he requested and as a result, plaintiff's wheelchair flipped backward thereby injuring him during transport. Klein Declaration, Exhibit 3 at pp. 65-66, 68.

Defendants knew that plaintiff wanted and needed immediate medical attention, and was in extreme pain after his wheel chair flipped backward. Klein Declaration, Exhibit 3 at pp. 74-75; Klein Declaration, Exhibit 4, pp. 81-82. Instead, defendants ignored plaintiff's pleas. Klein Declaration, Exhibit 3 at pp. 74-75; Klein Declaration, Exhibit 4, pp. 81-82. In this regard, defendants heard a loud crash and plaintiff screaming in the back of the DOC van. Klein Declaration, Exhibit 4, pp. 81-82, 89. Defendants realized that plaintiff's wheelchair flipped over but did not immediately seek medical attention for plaintiff. Klein Declaration, Exhibit 8 at pp. 21-22

Instead of pulling over and calling for an emergency response unit or ambulance or going to the Manhattan House of Detention where there were medical facilities available, defendants stopped twice in the streets of Brooklyn and still did nothing to assist plaintiff. Klein Declaration, Exhibit 8 at pp. 21-23. During these stops, defendants observed plaintiff's wheelchair broken in pieces all over the place, and plaintiff told defendants that he was in pain and needed help. Klein Declaration, Exhibit 8 at p. 23; Klein Declaration, Exhibit 4 at p. 86. Though aware of plaintiff's condition, defendants unjustifiably ignored plaintiff and left him on the floor of the DOC van, handcuffed, in extreme pain and incredibly uncomfortable in his broken wheelchair. Klein Declaration, Exhibit 4 at p. 90; Klein Declaration, Exhibit 8 at pp. 21-22. It took defendants at least an hour to get to the Manhattan House of Detention. Klein Declaration, Exhibit 4 at p. 85. As a result of defendants' inaction, plaintiff's injuries were arguably compounded. It is clear from the record that defendants knew plaintiff needed immediate medical care based on both plaintiff's pleas for medical assistance, as well as the

condition defendants found plaintiff in.  Instead defendants unjustifiably and maliciously denied plaintiff's right to necessary medical care in utter disregard of plaintiff's health and well being.  Because plaintiff has set forth genuine issues to be tried, his claims deserve to be heard by a jury.

**POINT III**

**DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY .**

A court must determine whether (1) an officer's conduct violated a constitutional right and (2) whether the right was clearly established of which a reasonable person would have known when assessing a claim of qualified immunity.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1992).

As to the first prong in a qualified immunity analysis, plaintiff has demonstrated that his federally protected rights have been violated for the reasons set forth in Points I and II, *supra.*

As to the second prong, defendants conduct was not objectively reasonable.  At the outset, it is well known that while riding in a motor vehicle, you must face the front.  The reason an occupant's seat must be forward facing in a vehicle is because the seated human body is much more able to sustain external loads applied to the front then to the side. Klein Declaration, Exhibit 1, ¶11.  Accordingly, occupied wheelchairs must be oriented to face forward in motor vehicles. Klein Declaration, Exhibit 1, ¶¶11, 12.  A front-facing orientation is "industry standard" as stipulated in voluntary industry standards (SAE J2249), manufacturer's installation and usage manuals, and in Part 38 of the ADA/DOT regulations (49CFR38.23(a)), and in Sure-Lok Inc., wheelchair tie down and occupant restraint installation and users instructions, dated August 2000 that were available to DOC. Klein Declaration, Exhibit 1, ¶12.

Secondly, it is the law that you must buckle up in a motor vehicle.  The reason occupant restraints are used is to minimize the risk of injury to persons in motor vehicles during normal driving maneuvers, emergency driving maneuvers, or a crash.  Klein Declaration, Exhibit 1, ¶16.

12

Accordingly, an occupied wheelchair must be secured in a vehicle pursuant to the following rules:

      a.   Occupied wheelchairs must be secured by four tie down straps. Two straps for the rear left side and rear right side of the wheelchair and two for the front left side and front right side of the wheelchair.

      b.   The tie down straps must be attached to the wheelchair's frame, <u>not</u> the wheelchair's wheels.

      c.   Once secured, the wheelchair must not move more than two inches in any direction.

( the "securement rules"). Klein Declaration, Exhibit 1, ¶14.

These securement rules are "industry standard" as stipulated in voluntary industry standards (SAE J2249), manufacturer's installation and usage manuals, and in Part 38 of the ADA/DOT regulations (49CFR38.23(a)), and in Sure-Lok Inc., wheelchair tie down and occupant restraint installation and users instructions, dated August 2000 that were available to DOC. Klein Declaration, Exhibit 1, ¶15.

Because the individual defendants consciously disregarded obvious safety standards, ignored the plaintiff's pleas and left him in horrible pain despite the opportunities to help him, defendants' conduct was not objectively reasonable. Therefore, Ferro and Nieves are not entitled to qualified immunity. [2]

---

[2] For the same reasons set forth herein, plaintiff's state law claims should not be dismissed under the Doctrine of Governmental or Good Faith Immunity.

**POINT IV**

**PLAINTIFF HAS ESTABLISHED MONELL LIABILITY.**

Plaintiff has established <u>Monell</u> liability and therefore the claims against defendant City of New York should not be dismissed.

In this regard, in order to prevail on a §1983 claim against the City of New York, plaintiff must show that a municipal policy caused the deprivation of his constitutional rights. <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690-691, 98 S. Ct. 2018, 2036 (1978). "To hold a City liable under §1983 for the unconstitutional acts of its employees, a plaintiff is required to prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional rights." <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983).

A.     **Plaintiff's Constitutional Rights Have Been Violated.**

At the outset, plaintiff must prove that he was denied a constitutional right.  For the reasons set forth in Points I and II, *supra*, and Point V, *infra*,  plaintiff has demonstrated that his federally protected rights have been violated.

B.     **Defendants Have Violated Plaintiff's Rights Pursuant to Existing, Unconstitutional Municipal Policies.**

1.     <u>Failure to Train</u>

A municipality can be liable for failing to train its employees where (1) a policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. <u>Walker v. City of New York</u>, 963 F. Supp. 270, 273 (2d Cir. 1992), <u>cert. denied</u>, 507 U.S. 961 (1993).

14

In this case, there are prisoners in DOC custody everyday that rely on wheelchairs for mobility and require transportation in DOC motor vehicles. Yet DOC employees do not receive any training concerning general ADA compliance, let alone more specific training concerning the securement of occupied wheelchairs in motor vehicles. Klein Declaration, Exhibit 4 at pp. 36-38; Klein Declaration, Exhibit 5 at pp.19-21; Klein Declaration, Exhibit 6 at pp. 50-53, 66, 93, 98-99, 103, 152-153, 162-166.

According to the defendants, the only way for officers to learn how to secure an occupied wheelchair to a DOC vehicle is if a senior officer demonstrates/explains to a junior officer what their personal understanding is of how to secure an occupied wheelchair. Klein Declaration, Exhibit 6 at pp. 50-53. This is entirely voluntary because this "on the job" training is not sanctioned or endorsed by DOC. Klein Declaration, Exhibit 6 at pp. 60-62. However, DOC is aware that junior officers may not be instructed correctly or may not be instructed at all. Klein Declaration, 6 at pp. 152-153.

As a result of the utter and flagrant failure to train, it is common for wheelchair-bound prisoners, like plaintiff, to fall over during transport. Klein Declaration, Exhibit 4 at pp. 54-55. In fact, DOC has knowledge that the lack of any formal and appropriate training in securing occupied wheelchairs in DOC vehicles could cause harm to the disabled prisoners. Klein Declaration, Exhibit 6 at p. 136.

In addition, expert Douglas Hobson, Ph.D. determined that DOC's failure to provide any formal training for DOC employees responsible for transportation of wheelchair bound prisoners causes a risk of very serious, if not fatal, injury to all wheelchair bound prisoners who are transported in a motor vehicle while in DOC custody including the plaintiff. Klein Declaration, Exhibit 1, ¶22. Thus Dr. Hobson has recommended that all DOC employees responsible for

transportation of wheelchair bound prisoners undergo appropriate training so that the wheelchair securement and occupant restraint systems are fully used as advised by the manufacturer. Klein Declaration, Exhibit 1, ¶23.

Based on the foregoing, plaintiff has established a prima facie showing that the City of New York has an unconstitutional policy and practice of failing to train its employees in transporting and securing occupied wheelchairs in DOC vehicles, which was the moving force behind the violation of plaintiff's federally protected rights.

2.    The Unconstitutional Securement Policy

A municipality can be held liable where there is a practice that "was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'" Patterson v. County of Oneida, 375 F. 3d 206, 226 (2d Cir. 2004) (quoting Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992)).

At the time of the incident, DOC did not have a written policy concerning securing and transporting wheelchair bound prisoners in motor vehicles. Klein Declaration, Exhibit 6 at pp. 29, 61-62, 65. But at the time of the incident and as set forth in Points II and III, *supra*, DOC had a de facto policy of (a) two-rear wheel securement and (b) positioning an occupied wheelchair facing the side of the DOC vehicle. Klein Declaration, Exhibit 3 at p. 49. It was this practice that caused plaintiff's wheelchair to flip backward thereby injuring him, as well as other wheelchair bound prisoners. Klein Declaration, Exhibit 1, ¶18; Klein Declaration, Exhibit 4 at pp. 54-55.

Six months after the incident, DOC memorialized its de facto policy of two-rear wheel securement in Warden's Memorandum 64/04, entitled "Transporting Inmates in Wheelchairs"

16

## POINT V

## DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHT.

With respect to plaintiff's First Amendment claims, defendants failed to address the merits of plaintiff's claims thereby waving their opportunity to move on this claim.

To prove a First Amendment retaliation claim, a prisoner must demonstrate: "(1) that the speech or conduct at issue was protected, (2) defendants took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004)(citations omitted)(finding that plaintiff sufficiently plead First Amendment claim wherein it was alleged that plaintiff's use of the prison grievance system was deterred by the filing of false misbehavior reports and three week sentence in "keeplock").

As set forth in the Second Amended Complaint, plaintiff, a paraplegic, protested the way defendants were securing his wheelchair in a DOC vehicle because he would be injured and indeed, as a result of their actions, he fell thereby fracturing his inferior pubic ramus. Second Am. Compl. ¶8; Klein Declaration, Exhibit 3 at pp. 48-49, 60-62; Klein Declaration Exhibit 8 at p. 16.  In retaliation for plaintiff's protests, defendants ignored plaintiff and left him on the floor of the DOC van, handcuffed, in extreme pain and incredibly uncomfortable in his broken wheelchair. Second Am. Compl., ¶¶10-13; Klein Declaration, Exhibit 4 at p. 90; Klein Declaration, Exhibit 8 at pp. 21-22.

Plaintiff's First Amendment right was violated because plaintiff protested a matter of public concern, namely a safety matter that affects all wheelchair bound prisoners, and defendants retaliated against plaintiff by leaving him on the floor of the DOC van, handcuffed, in extreme pain and incredibly uncomfortable in his broken wheelchair.  Plaintiff's First Amendment claim was therefore properly pled.

18

and dated November 30, 2004. Klein Declaration, Exhibit 9.  Warden's Memorandum 64/04

states in relevant part:

> Once in the vehicle, position the wheelchair in the desired location and lock the wheels. The wheelchair has two large wheels in the rear---one placed on each side---and two smaller front wheels.----.
>
> Use the fasteners to secure the large wheels to the vehicle floor. One securing fastener is to be used on each of the large rear wheels of the wheelchair.
>
> Klein Declaration, Exhibit 9.

However, the Warden's Memorandum 64/04 was silent as to the positioning of the wheelchair.

Klein Declaration, Exhibit 9.

Expert Douglas Hobson, Ph.D. determined that DOC policies, namely two rear wheel

securement and sideways positioning of the occupied wheelchair, are not in accordance with

industry recommended standards and Americans with Disabilities Act ("ADA") regulations.

Klein Declaration, Exhibit 1, ¶27. Thus Dr. Hobson recommended that DOC implements

policies concerning the securement and transportation of wheelchair bound prisoners in

accordance with industry recommended standards and Americans with Disabilities Act ("ADA")

regulations. Klein Declaration, Exhibit 1, ¶28. It is clear that if DOC fails to implement policies

as recommended by Dr. Hobson, wheelchair bound prisoners will continue to face an

unnecessary risk of harm and actual injury when being transported by DOC. Klein Declaration,

Exhibit 1, ¶28. Indeed, this unconstitutional policy was also a moving force behind the violation

of plaintiff's federally protected rights.

Based on the foregoing, plaintiff has established Monell liability and therefore the federal

claims against defendant City of New York should not be dismissed.

17

## POINT VI

### PLAINTIFF'S WITHDRAWAL OF CERTAIN CLAIMS.

Plaintiff consents to the dismissal of his Fourth Amendment claim and state law claims of intentional infliction of emotional distress and prima facie tort.

## POINT VII

### PLAINTIFF'S STATE LAW CLAIMS OF COMMON LAW NEGLIGENCE AND NEGLIGENT TRAINING/SUPERVISION SHOULD NOT BE DISMISSED.

To prove a claim of negligence, plaintiff must show (1) that defendants owed plaintiff a duty of reasonable care, (2) the duty was breached, and (3) the resulting injury was proximately caused by the breach. <u>Katersky v. American Airlines</u>, 314 F. Supp.2d 275, 277 (S.D.N.Y. 2004). In this case, it is evident that as a result of defendants negligence, plaintiff was injured.

At the outset, defendants, who assume responsibility for the care, custody, and control of all inmates in their custody, do not dispute that they owed a duty of reasonable care to plaintiff.

Secondly, defendants, who had custody of plaintiff, put plaintiff into the DOC van improperly. Klein Declaration, Exhibit 1, ¶18. Defendants were warned by plaintiff that they were improperly securing his wheelchair and he would fall. Klein Declaration, Exhibit 3 at pp. 48-49, 60-62. Because plaintiff is a paraplegic and was both a prisoner and handcuffed at the time, plaintiff could not simply get out of his wheelchair and correct the unsafe condition himself. Plaintiff relied on defendants to not put him in harm's way. Though warned, defendants did not secure the front of plaintiff's wheelchair as he requested and as a result, plaintiff's wheelchair flipped backward thereby injuring him during transport. Klein Declaration, Exhibit 3 at pp. 65-66, 68.

Based on expert Dr. Douglas Hobson's opinion, plaintiff's wheelchair flipped backward injuring plaintiff because DOC officers: (a) improperly oriented plaintiff's wheelchair facing the

19

passenger side of the DOC van and, (b) improperly secured plaintiff's wheelchair to the DOC

van. Klein Declaration, Exhibit 1, ¶17.

Defendants are also likewise negligent in their training and supervision. Defendants have

admitted that the failure to train and supervise their DOC employees results in a foreseeable risk

of serious physical harm to disabled prisoners. Klein Declaration, Exhibit 3 at pp. 48-49, 60-62;

Klein Declaration Exhibit 8 at p. 16; Klein Declaration, Exhibit 6 at p. 136.

In this case, there are prisoners in DOC custody everyday that rely on wheelchairs for

mobility and require transportation in DOC motor vehicles.  Yet DOC employees do not receive

any training concerning general ADA compliance, let alone more specific training concerning

the securement of occupied wheelchairs in motor vehicles. Klein Declaration, Exhibit 4 at pp.

36-38; Klein Declaration, Exhibit 5 at pp.19-21; Klein Declaration, Exhibit 6 at pp. 50-53, 66,

93, 98-99, 103, 152-153, 162-166.

The only way for officers to learn how to secure an occupied wheelchair to a DOC

vehicle is if a senior officer demonstrates/explains to a junior officer what their personal

understanding is of how to secure an occupied wheelchair. Klein Declaration, Exhibit 6 at pp.

50-53.  However there is no oversight and DOC is aware that junior officers may not be

instructed correctly or instructed at all. Klein Declaration, 6 at pp. 152-153.

DOC is aware that as a result of the failure to train, it is common for wheelchair-bound

prisoners, like plaintiff, to fall over during transport. Klein Declaration, Exhibit 4 at pp. 54-55.

In addition, expert Douglas Hobson, Ph.D. determined that DOC's failure to provide any

formal training for DOC employees responsible for transportation of wheelchair bound prisoners

causes a risk of very serious, if not fatal, injury to plaintiff in this case and potentially to all

20

wheelchair bound prisoners who are transported in a motor vehicle while in DOC custody. Klein Declaration, Exhibit 1, ¶22.

Based on the foregoing, plaintiff has established that as a result of defendants' negligence and defendants negligent training and supervision of its employees, plaintiff was injured.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that defendants' motion be denied and such further and other relief as the Court deems appropriate.

Dated:      Brooklyn, New York
            October 27, 2006


                        LEVENTHAL & KLEIN, LLP
                        Attorneys for Plaintiff DEVIN SAYERS
                        45 Main Street, Suite 820
                        Brooklyn, New York 11201
                        (718) 722-4100


                 By:    _____
                        BRETT H. KLEIN (BK4744)


21